Hilda Esther Bidot Almodóvar, demandante y recurrida, *v.* Victoriano Moisés Urbino Valle, San Juan Racing Association, Inc., demandados y recurridos, y American International Insurance Company of Puerto Rico, demandada y peticionaria.

*Número:* CC-2000-431 *Resuelto:* 13 de diciembre de 2002

*Héctor F. Oliveras, Isabel M. Guillán Bermúdez y Elba M. Báez Rivera*, abogados de la parte peticionaria; *Virgilio Mainardi Peralta*, abogado de la parte recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El caso de epígrafe surge como una secuela de la opinión emitida por este Tribunal en *Urbino v. San Juan Racing Assoc., Inc.*, 141 D.P.R. 210 (1996).[1]

Hoy nos toca resolver si el pago de una sentencia por la parte demandada en compensación por unos daños gananciales, efectuado éste en su totalidad al ex cónyuge que entabló la demanda cuando el matrimonio estaba vigente, extinguió la obligación del demandado en cuanto al ex cónyuge que no intervino como parte en dicho pleito. Al resolver, se tomará en consideración que en ningún momento se le notificó ni al tribunal ni a la parte demandada que el vínculo matrimonial se había disuelto.

A continuación exponemos los hechos pertinentes conforme surgen de los documentos que obran en autos.

I

La Sra. Hilda Esther Bidot Almodóvar (en adelante la señora Bidot) y el Sr. Victoriano Moisés Urbino Valle (en adelante el señor Urbino) contrajeron matrimonio bajo el régimen de la sociedad legal de gananciales el 27 de abril

---

[1] En esa ocasión resolvimos que "un cónyuge tiene la capacidad legal necesaria para reclamar los daños gananciales sin tener que incluir o mencionar en la demanda la sociedad de gananciales y al otro cónyuge".

de 1963. Durante la vigencia de su matrimonio, el señor Urbino presentó una acción de daños y perjuicios contra San Juan Racing Association, Inc. (en adelante San Juan Racing) y su aseguradora American International Insurance Company of Puerto Rico (en adelante American) por los daños sufridos por una yegua de carreras propiedad de la sociedad legal de gananciales compuesta por él y la señora Bidot.

Durante el trámite del caso, y previo a que el tribunal de instancia dictara sentencia en el caso de daños y perjuicios, el 2 de febrero de 1990, el señor Urbino y la señora Bidot se divorciaron por consentimiento mutuo.(²) Como parte de los procedimientos en el caso de divorcio, éstos sometieron al tribunal una estipulación hecha ante notario público y firmada por ambos, en la cual se relacionaban los bienes que cada uno habría de conservar como resultado de la división de la sociedad de gananciales habida entre ambos. Con respecto a los caballos de carrera y el establo "U Racing", los esposos estipularon que dichos bienes, valorados en ciento treinta y cuatro mil dólares, quedarían como propiedad del señor Urbino. *Nada se mencionó en la estipulación acerca de la forma en que se adjudicaría a una o ambas partes el monto de la sentencia de daños y perjuicios que pudiese recaer en su día a favor de la sociedad legal de gananciales en el pleito que se encontraba pendiente ante el tribunal de instancia.*

Aproximadamente tres años más tarde, el 25 de junio de 1993, el tribunal de instancia dictó su sentencia en cuanto a la reclamación por daños y perjuicios. Condenó a las codemandadas San Juan Racing y American a pagar a la parte demandante, señor Urbino, la cantidad de cuatrocientos sesenta mil dólares por el valor de la yegua, dos mil ciento noventa y ocho dólares por gastos médicos y quinientos dólares en concepto de honorarios de abogado, más las costas del pleito.

---

(²) Caso Civil Núm. RF90–304, Tribunal Superior, Sala de Bayamón.

Inconformes, San Juan Racing y American acudieron ante nos y solicitaron la revisión de esta sentencia. Argumentaron que el descubrimiento de prueba había revelado que el señor Urbino era casado y que siendo la señora Bidot parte indispensable en el pleito, procedía la desestimación de la demanda. Expedimos el recurso y resolvimos que el señor Urbino tenía la capacidad legal necesaria para reclamar por daños de naturaleza ganancial en virtud de las disposiciones de los Arts. 91 y 93 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 284 y 286, sin que fuera necesario incluir o mencionar en la demanda a la sociedad legal de gananciales y al otro cónyuge como partes en el pleito, pues la prueba había revelado el carácter ganancial de la reclamación del señor Urbino. *Urbino v. San Juan Racing Assoc., Inc.*, supra. Nada informó la parte demandante al Tribunal o a las codemandadas San Juan Racing y American sobre el divorcio, la disolución de la sociedad de bienes gananciales y la creación de una comunidad de bienes, en cuanto a aquellos bienes gananciales no incluidos entre la estipulación sobre división de gananciales. Devolvimos el caso para que continuasen los trámites de forma compatible con lo que habíamos resuelto.

Posteriormente, American pagó al señor Urbino el importe de la sentencia recaída contra San Juan Racing ascendente a quinientos noventa y ocho mil dólares. Un año más tarde, la señora Bidot presentó una demanda contra el señor Urbino, la San Juan Racing y American. Reclamó al señor Urbino el pago de la mitad de lo cobrado en virtud de la naturaleza ganancial de dicha reclamación y como consecuencia de haber pactado, a través de una estipulación, que se liquidarían por mitad los bienes de la sociedad de bienes gananciales. Reclamó, además, a American y a San Juan Racing, el pago de la mitad de la sentencia que le correspondía y adujo que el pago hecho al señor Urbino no extinguió su obligación para con ella. En consecuencia, solicitó que se declarara a los codemandados, señor Urbino,

American y San Juan Racing, solidariamente responsables por el pago de la suma de dinero que se le adeudaba, ascendente a doscientos noventa y nueve mil dólares.

Días después de entablada la demanda, la señora Bidot presentó una moción de sentencia sumaria parcial. En ella, solicitó que el tribunal dictara sentencia sumaria contra el señor Urbino(3) para ordenarle a este último el pago de la cantidad reclamada en la demanda, pues no había controversia en cuanto a que el Tribunal Supremo había decretado que la compensación en daños era de naturaleza ganancial y que al momento de recaer la sentencia, y como consecuencia del divorcio entre ella y el señor Urbino, había surgido en cuanto a esta cantidad una comunidad de bienes de la cual le correspondía el 50% de los haberes. Esto incluía la mitad de lo pagado por American al señor Urbino. Con esta solicitud, la señora Bidot acompañó una copia de la estipulación presentada por los entonces esposos al tribunal en el caso de divorcio por consentimiento mutuo. También acompañó un documento, aparentemente firmado por ambas partes en la misma fecha en que fue suscrita y juramentada la estipulación. En éste se indicó que "respecto a una reclamación pendiente por accidente de la Dindu-U, cualquier suma de dinero que se obtenga de la misma [será d]ividida de por mitad entre nosotros".

El señor Urbino se opuso a la moción de sentencia sumaria. Alegó que jamás había firmado acuerdo o estipulación privada con la parte demandante en perjuicio de lo que legalmente se había estipulado mediante la sentencia de divorcio. Adujo, además, que por haber controversias sustanciales de hechos que involucraban no sólo a los ex esposos, sino también a la San Juan Racing y su compañía aseguradora, American, no procedía resolver la demanda

---

(3) No solicitó sentencia sumaria en cuanto a las demás codemandadas, pues éstas habían sido recientemente emplazadas y aún no habían contestado la demanda.

en cuanto a su persona mediante el mecanismo procesal extraordinario de sentencia sumaria.

El tribunal de instancia dictó la sentencia sumaria parcial para ordenar al señor Urbino pagar a la señora Bidot la mitad del pago hecho a éste por American, doscientos noventa y nueve mil dólares. Entendió el tribunal que al momento de ocurrir el pago de la sentencia lo que existía entre el señor Urbino y la señora Bidot era una comunidad de bienes en la cual cada ex cónyuge tenía una cuota pro indivisa correspondiente al 50% por razón del origen ganancial de la reclamación en daños y perjuicios. Por lo tanto, concluyó que el señor Urbino debía pagar a la señora Bidot la mitad de lo que éste recibió de San Juan Racing y su compañía aseguradora. De esta determinación, el señor Urbino acudió en revisión ante el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) el que confirmó la sentencia apelada. Finalmente, el señor Urbino acudió ante nos mediante un recurso de *certiorari*, que fue denegado.

Posteriormente, la señora Bidot presentó una segunda moción de sentencia sumaria, esta vez contra San Juan Racing y American. Alegó que, habiendo surgido una comunidad de bienes entre ella y el señor Urbino, el importe de la sentencia pertenecía a ambos pro indiviso, y que por haber hecho la San Juan Racing el pago en su totalidad exclusivamente al señor Urbino, con pleno conocimiento del carácter ganancial de la reclamación, dicho pago no había extinguido la obligación de la San Juan Racing con ella.

Las codemandadas comparecieron, oponiéndose. Adujeron que desconocían que los esposos Bidot-Urbino se hubiesen divorciado y que ninguno de éstos les informó de ese hecho. Señalaron que el pago se le hizo al señor Urbino en la creencia de que éste continuaba en su carácter de coadministrador de la sociedad de gananciales. Añadieron que fueron los propios ex esposos los que, con su silencio, indu-

jeron a error a la parte demandada. En consecuencia, solicitaron que se dictara sentencia sumaria a su favor para desestimar la demanda presentada por la señora Bidot. Posteriormente, las codemandadas presentaron una demanda contra coparte contra el señor Urbino. Adujeron que éste había evadido todos los intentos realizados por la señora Bidot para cobrar su acreencia, y que por esa razón ésta había presentado dicha acción en cuanto a las codemandadas. Señalaron que el señor Urbino debía responderle a la parte demandante o, en su defecto, devolver o satisfacer a la San Juan Racing y a su compañía aseguradora la cantidad de doscientos noventa y nueve mil dólares de los cuales se había apropiado a sabiendas de que dicha suma no le correspondía.

El 14 de septiembre de 1999, el tribunal de instancia dictó una sentencia contra las codemandadas San Juan Racing y American. Concluyó que las codemandadas estaban obligadas a realizar el pago dividido, según las cuotas de cada ex cónyuge, y que aun desconociendo el hecho de la disolución del matrimonio, las codemandadas venían entonces obligadas a realizar el pago a la persona a favor de la cual hubiese quedado constituida la obligación, fuesen comuneros o integrantes de una sociedad conyugal. En consecuencia, el foro de instancia concluyó que el pago hecho al señor Urbino no liberó a las codemandadas de su obligación para con la señora Bidot, por lo que ordenó a éstas a pagar doscientos noventa y nueve mil dólares a la señora Bidot en concepto de la mitad del importe total de la sentencia por daños y perjuicios, más las costas, el interés legal correspondiente y los honorarios de abogado. Igualmente, el tribunal de instancia declaró con lugar la demanda contra coparte presentada por la San Juan Racing y American, por lo que concluyó que el señor Urbino debía reembolsarles igual suma del exceso de lo pagado por las codemandadas, más el interés legal correspondiente desde el momento cuando se efectuó el pago en exceso.

Inconforme, American recurrió al Tribunal de Circuito. Éste confirmó la determinación del tribunal de instancia. Concluyó que al haber entregado y adjudicado el pago al señor Urbino exclusivamente, aun cuando conocía que tal pago le correspondía a la sociedad legal de gananciales, American realizó un pago equivocado que no extinguió su obligación.

Denegada la reconsideración, American recurrió ante nos mediante un recurso de *certiorari*, señalando como único error el siguiente:

> Erró el Tribunal Apelativo al no reconocer que el pago hecho por la apelante [aquí peticionaria] extinguió la deuda.

Acordamos revisar y expedimos el recurso. Ambas partes han comparecido, y con el beneficio de sus argumentos resolvemos.

## II

En reiteradas ocasiones hemos expresado que la sociedad de gananciales es una entidad separada y distinta de los cónyuges que la componen, con personalidad jurídica propia. Véanse: *Vega v. Bonilla*, 153 D.P.R. 588 (2001); *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925 (1996); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862 (1981); *Rovira Tomás v. Srio. de Hacienda*, 88 D.P.R. 173 (1963); *Echevarría v. Despiau*, 72 D.P.R. 472 (1951).

En Puerto Rico, a partir de la reforma de 1976 del Código Civil, ambos cónyuges son administradores de la sociedad de bienes gananciales con capacidad para representarla. Ley Núm. 51 de 21 de mayo de 1976 (31 L.P.R.A. secs. 284, 286, 3661, 3671–3672 y 3717); *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998); *Urbino v. San Juan Racing Assoc., Inc.*, supra; *Reyes v. Cantera Ramos, Inc.*, supra.

A esos fines, el Art. 91 del Código Civil, 31 L.P.R.A. sec.

284, en lo pertinente, dispone que, salvo estipulación en contrario, "[a]mbos cónyuges serán los administradores de los bienes de la sociedad conyugal". Por su parte, el Art. 93 del Código Civil, 31 L.P.R.A. sec. 286, establece que "cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal". Dispone, además, el citado Art. 93 que "[c]ualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales".

Según nos comenta la profesora Migdalia Fraticelli Torres, en su artículo *Un nuevo acercamiento a los regímenes económicos en el matrimonio: la sociedad legal de gananciales en el Derecho puertorriqueño*, 29 Rev. Jur. U.I.P.R. 413, 449 (1995), la presunción establecida en el Art. 93 del Código Civil

> ... tiene el efecto práctico de dar legitimación a ambos consortes para actuar en nombre de la sociedad, lo que favorece la posición social y jurídica de la mujer, *pero, a un mismo tiempo favorece y protege los intereses de los terceros que contratan con la sociedad.* (Énfasis suplido.)

En *Urbino v. San Juan Racing Assoc., Inc.*, supra, pág. 214, expresamos que con las enmiendas de 1976,

> ... la Asamblea Legislativa equiparó la facultad de ambos cónyuges para administrar la sociedad legal de gananciales e incorporó el principio de coadministración y representación legal. [Cita omitida] *Desde entonces, individualmente, tanto el esposo como la esposa tienen capacidad de jure para representar a la sociedad de gananciales en los tribunales.* (Énfasis en el original.)

Ahora bien, una vez disuelto el matrimonio, concluye la sociedad legal de gananciales. Art. 1315 del Código Civil, 31 L.P.R.A. sec. 3631. Es entonces cuando nace una comunidad de bienes, de la cual los ex cónyuges son comuneros hasta que se liquide la sociedad. *Soto López v. Colón*, 143 D.P.R. 282 (1997). La comunidad de bienes que así surge no se rige por las normas de la sociedad de ganan-

ciales sino por las normas referentes a la copropiedad. Art. 326 del Código Civil, 31 L.P.R.A. sec. 1271; *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219 (1984).

 Nuestro Código Civil dispone que al disolverse el matrimonio, el marido y la mujer harán suyos por mitad las ganancias o beneficios obtenidos por cualquiera de ellos durante el mismo matrimonio. 31 L.P.R.A. sec. 3621. De la misma manera, "lo generado durante el término de la comunidad en liquidación es por partes iguales, ya que cada comunero participa en los beneficios y cargas de la comunidad en proporción a su cuota". (Citas omitidas.) *González v. Quintana*, 145 D.P.R. 463, 470 (1998).

### III

En el caso de autos no está en controversia el hecho de que para el 25 de junio de 1993, fecha cuando el tribunal de instancia dictó sentencia en el pleito original de daños y perjuicios condenando a la San Juan Racing y a American a satisfacer al señor Urbino, como administrador de la sociedad de bienes gananciales, la suma de quinientos noventa y ocho mil dólares,[4] ésta ya no existía. Para esa fecha ya se había liquidado la mayor parte de la sociedad de bienes gananciales y había surgido una comunidad de bienes entre el señor Urbino y la señora Bidot, en cuanto a aquel bien no incluido en la estipulación sometida para la liquidación de la sociedad de bienes gananciales en el caso de divorcio por consentimiento mutuo, la demanda en daños y perjuicios presentada por el señor Urbino, como el entonces administrador de la sociedad de bienes gananciales, contra San Juan Racing y American. El matrimonio Urbino-Bidot quedó disuelto mediante sentencia de divor-

---

[4] Esta sentencia fue confirmada por el Tribunal Supremo mediante la opinión emitida el 28 de junio de 1996.

cio por consentimiento mutuo dictada el 2 de febrero de 1990.

Como mencionáramos anteriormente, en el primer pleito que se suscitó sobre esta controversia, *Urbino v. San Juan Racing Assoc., Inc.*, supra, este Tribunal determinó que el señor Urbino tenía la capacidad legal necesaria para reclamar daños gananciales sin tener que incluir o mencionar en la demanda a la sociedad de gananciales o a su cónyuge. En ese caso se dictó sentencia "estimatoria de la acción y compensación como perteneciente a la Sociedad Legal de Gananciales Urbino-Bidot". (Énfasis suprimido.) Íd., pág. 220.

Resulta importante señalar que de nuestro expediente no surge que la señora Bidot o el señor Urbino le hubiesen informado al tribunal, o a las codemandadas San Juan Racing y American, el hecho de que durante el trámite del caso ellos se habían divorciado. Tampoco surge que la señora Bidot, con posterioridad al divorcio, hubiese solicitado intervenir en el pleito.

Así las cosas, la aquí peticionaria, American, pagó el importe total de la sentencia recaída contra San Juan Racing a quien, a tenor con los documentos que obraban en el expediente del tribunal, fungía como administrador de la sociedad de bienes gananciales, esto es, el señor Urbino.

Ahora nos corresponde determinar si el pago efectuado por la peticionaria al señor Urbino extinguió su obligación para con la sociedad legal de gananciales Urbino-Bidot o si, por el contrario, el pago estuvo mal hecho, pudiendo así la señora Bidot reclamar y recobrar su parte directamente de American.

En el caso ante nos tanto el foro de instancia como el Tribunal de Circuito determinaron que el pago hecho al señor Urbino no liberó a la peticionaria de su obligación para con la señora Bidot. Fundamentaron su decisión en que aun desconociendo ésta el hecho de la disolución del matrimonio Urbino-Bidot, lo que procedía era el pago con-

junto a los integrantes de la sociedad legal de gananciales. No podemos estar de acuerdo. Veamos.

## IV

Sostiene la peticionaria que, siguiendo el mandato del Tribunal Supremo, procedió a satisfacer el monto de la sentencia al señor Urbino, quien era el único demandante en dicho pleito, bajo el entendido de que éste todavía estaba casado con la señora Bidot y era el cónyuge que representaba a la sociedad de bienes gananciales Urbino-Bidot en esta reclamación. Es decir, la peticionaria actuó bajo la premisa de que la sociedad legal de gananciales Urbino-Bidot aún existía. Del expediente no surge documento alguno que hubiese alertado a las codemandadas San Juan Racing y American de que la sociedad de bienes gananciales ya no existía.

Para atender adecuadamente esta controversia del pago, resulta pertinente analizar las disposiciones del Art. 1118 del Código Civil, el cual dispone: "[e]l pago hecho de buena fe al que estuviere en posesión del crédito liberará al deudor." 31 L.P.R.A. sec. 3168.

En *Rodríguez v. Banco Popular*, 66 D.P.R. 781 (1946), tuvimos la oportunidad de interpretar el citado artículo. En ese caso se trataba de una reclamación presentada por los herederos legítimos de un causante contra un banco, al haber efectuado éste un pago de fondos en depósito a la persona revestida de las condiciones externas de acreedor verdadero por haber sido declarada por un tribunal competente heredera del dueño anterior del crédito. Allí, citando a Manresa, expresamos:

> "Serán casos de aplicación del art. 1164 y consiguiente eficacia del pago: *el hecho al acreedor primitivo por un deudor que no conozca la cesión del crédito ni la incapacidad sobrevenida a aquél* .... En estos casos, *ni puede perjudicar al deudor que aquéllos a quienes pague sean luego vencidos en juicio, ni*

*a los que en éste triunfen quedará otro medio que reclamar al que cobró indebidamente."* (Énfasis suplido y en el original.) Íd., págs. 784–785.

En su consecuencia, resolvimos que el pago hecho en ese caso liberó al deudor, ya que

[e]l banco no hizo otra cosa que pagar de buena fe a la persona que había sido declarada heredera por una corte, y no tenía facultad para desatender lo resuelto ni le competía ir a la corte a alegar que la resolución dictada estaba viciada de nulidad. *Rodríguez v. Banco Popular*, supra, pág. 786.

En la situación de autos están presentes circunstancias similares a las del caso antes citado. *En el caso ante nos American pagó a la persona que según lo resuelto por este Tribunal (Urbino v. San Juan Racing Assoc., Inc., supra) estaba capacitada para representar la sociedad legal de gananciales Urbino-Bidot en relación con esa reclamación. Más importante aún, el pago se hizo bajo la creencia de que dicha sociedad de gananciales aún existía.* En vista de ello, entendemos que el pago liberó a American de su obligación para con la sociedad legal de gananciales y, por ende, para con uno de sus integrantes, la señora Bidot, ya que American no tenía facultad para desobedecer el mandato de este Tribunal ni tampoco venía obligada a verificar si el señor Urbino todavía estaba capacitado para representar la sociedad legal de gananciales Urbino-Bidot, o si esta última aún existía.

Anteriormente, hemos reconocido que existen casos en los cuales la mejor práctica es incluir a ambos cónyuges como partes, sirviéndoles emplazamientos individuales, evitando así una lesión de los derechos del cónyuge omitido como parte en la demanda. Así pues, en *Carrero Suárez v. Sánchez López*, 103 D.P.R. 77 (1974), nos enfrentamos a un caso en el cual una concubina de un hombre casado presentó una acción solicitando la disolución y liquidación de la comunidad de bienes habida entre ella y su concubino casado. Emplazado el concubino, como único de-

mandado, no hizo alegación alguna, y dos años y medio más tarde, se dictó sentencia en rebeldía por medio de la cual se le adjudicó a la concubina demandante " 'la mitad del valor en el mercado' de las tres fincas urbanas objeto de la reclamación". Íd., pág. 79. Al revocar dicho dictamen, resolvimos que la esposa del concubino debió haber sido traída al pleito como parte indispensable, emplazándola y notificándole de todos los procedimientos, evitando de esa manera que sus derechos resultaran perjudicados. Bajo estas circunstancias, no se podía confiar en que el esposo defendiese adecuadamente los intereses de la sociedad de bienes gananciales y los de su esposa. De otra parte, en *Alicea Álvarez v. Valle Bello, Inc.*, 111 D.P.R. 847, 854 (1982), expresamos

> ... la necesidad de incluir ambos cónyuges como partes y servirles emplazamientos individuales en acciones que afectan el patrimonio de la sociedad de gananciales obviando el riesgo de nulidad, ante la posibilidad de que la defensa del interés social por uno solo no se ejercite con la debida eficiencia, o la existencia de incompatibilidad entre los cónyuges respecto a la defensa de su interés dentro de una sociedad que ambos gobiernan con igual autoridad.

La situación en el caso de autos es muy particular y distinta a los casos previamente discutidos. Del expediente no surge alegación ni prueba alguna de que el señor Urbino no defendiera adecuadamente en el pleito de daños y perjuicios los intereses de la sociedad legal de gananciales Urbino-Bidot. Sin embargo, no cabe duda de que la posición de la señora Bidot en relación con sus intereses y los del señor Urbino cambió luego del divorcio. Luego del divorcio existía una verdadera posibilidad de que sus intereses no fueran adecuadamente representados por el señor Urbino. Ante esta posibilidad, la señora Bidot debió haber solicitado la intervención en el pleito, e informar que la sociedad legal de gananciales ya no existía. La intervención de parte de la señora Bidot ciertamente hubiese evi-

tado que el pago de la sentencia se hubiese efectuado en su totalidad al señor Urbino.

Por otro lado, somos del parecer que la señora Bidot no puede pretender válidamente, en esta etapa de los procedimientos, cobrar la parte que le corresponde de dicha sentencia, directamente de American, cuando, teniendo conocimiento de la pendencia de una acción en la que se reclamaban daños gananciales y teniendo, además, amplia oportunidad para solicitar la intervención en dicho pleito para defender sus intereses, optó por cruzarse de brazos.[5]

Resulta importante destacar que desde la fecha cuando se dictó la sentencia de divorcio, el 2 de febrero de 1990, hasta la fecha cuando el Tribunal Supremo confirmó el dictamen de instancia en el pleito de daños y perjuicios, transcurrieron aproximadamente seis años. Sin embargo, no fue hasta aproximadamente un año después de resuelta la controversia y de que American verificara el pago de la sentencia, que la señora Bidot interpuso la demanda contra el señor Urbino, la San Juan Racing y American, reclamando, *por primera vez*, su derecho a la mitad de la compensación concedida por el tribunal.

En resumen, de lo anterior podemos colegir lo siguiente: durante los seis años que duró la tramitación del pleito luego de disuelto el matrimonio Urbino-Bidot, la señora Bidot, teniendo conocimiento de éste y conociendo que el señor Urbino ya no podía representar adecuadamente sus intereses, no le informó ni al tribunal ni a las codemandadas San Juan Racing y American que la sociedad legal de gananciales Urbino-Bidot había dejado de existir. Tampoco solicitó intervenir en el pleito de manera que sus intereses quedaran protegidos. El desinterés y abandono total de la reclamación ganancial por parte de la señora Bidot fue la

---

[5] Del acuerdo privado suscrito entre el señor Urbino y la señora Bidot el 25 de enero de 1990, surge que al menos desde esta fecha, esta última tenía conocimiento de que se encontraba pendiente ante los tribunales una reclamación sobre un bien ganancial y que conocía, además, de su derecho a la mitad de la suma que fuera concedida por el tribunal en su día.

que propició el que el pago se le hiciese sólo al señor Urbino. El desconocimiento del tribunal y de las codemandadas San Juan Racing y American de que el matrimonio Urbino-Bidot se había disuelto, combinado con el hecho de que este Tribunal había reconocido la capacidad de cualquiera de los cónyuges para representar la sociedad legal de gananciales en los tribunales, justificaron el que el pago total de la sentencia se hiciera únicamente al señor Urbino.

Por todo lo anterior, concluimos que la peticionaria American no pagó mal ni indebidamente.

Además, resolvemos que en casos como el de autos, de reclamaciones de la sociedad de bienes gananciales, en que ni las partes demandadas ni el tribunal tienen conocimiento de que el matrimonio se ha disuelto, el ex cónyuge que no es parte en el pleito debe informarle al tribunal este cambio de circunstancia y solicitar la intervención para de esta forma proteger sus derechos. El único remedio disponible para el ex cónyuge que decide no intervenir en el pleito y luego resulta afectado, es la reclamación contra el ex cónyuge que compareció como parte demandante y cobró indebidamente la mitad de la sentencia que le correspondía al otro ex cónyuge. Bajo estas circunstancias, el ex cónyuge que resulte perjudicado no puede reclamarle al tercero que, confiando en la capacidad que tienen ambos cónyuges a la luz del derecho vigente para actuar a nombre de la sociedad legal de gananciales, realizó el pago en su totalidad al único cónyuge que compareció como administrador de la sociedad de bienes gananciales y reclamó como parte demandante lo que a ésta se le debía.

En su consecuencia, la señora Bidot está impedida de cobrar directamente de American o de San Juan Racing la porción a la que a tenor con la sentencia parcial dictada por el foro de instancia, tiene derecho del monto de la sentencia ya satisfecha por dichas partes al señor Urbino.

Por los fundamentos antes expuestos, *procede revocar tanto la sentencia emitida por el Tribunal de Circuito como la dictada por el foro de instancia, desestimar la reclamación instada contra San Juan Racing y American, y devolver el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita.