*1009 Opinión de conformidad emitida por la
Juez Asociada Se-ñora Rodríguez Rodríguez,
a la que se le unen el Juez Presidente Señor Hernández Denton y el Juez Asociado Señor Rivera Pérez.
Nuevamente tenemos ante nuestra consideración una controversia referente a una comunidad post ganancial. En esta ocasión determinamos el momento a partir del cual un ex cónyuge está obligado a pagarle rentas al otro ex cón-yuge por el uso exclusivo de la residencia que una vez fue conyugal. Veamos los hechos que originan esta contro-versia.
I
El 10 de marzo de 2005, la Sra. Ida Nicza Meléndez Berríos (señora Meléndez Berríos) presentó una acción de división de comunidad de bienes contra el Sr. Wilfredo Maldonado Dieppa (señor Maldonado Dieppa). En ésta alegó que estuvo casada con el señor Maldonado Dieppa bajo el régimen de sociedad de gananciales desde el 4 de mayo de 1974 hasta el 17 de marzo de 1998, fecha cuando se declaró roto y disuelto el vínculo matrimonial por la causal de separación. Alegó la existencia de varios bienes pertenecientes a ambos cónyuges, obtenidos durante la du-ración del matrimonio y solicitó la división de la comuni-dad existente entre éstos, nacida tras la disolución de la unión matrimonial.
El señor Maldonado Dieppa contestó oportunamente dicha demanda y presentó una reconvención. Solicitó que se le impusiera a la señora Meléndez Berríos una renta a ra-zón de seiscientos dólares mensuales por el uso de la pro-piedad que fue una vez la residencia conyugal. Alegó que la señora Meléndez Berríos utilizó exclusivamente dicha pro-piedad, como residencia y taller de trabajo “sin pagar una *1010 adecuada compensación”. Solicitó que los cánones fueran satisfechos desde el 2 de junio de 2000, fecha cuando la menor de los hijos del matrimonio se emancipó por mayo-ridad, hasta la liquidación de la comunidad.(1)
Así las cosas, el señor Maldonado Dieppa solicitó que se dictara sentencia sumaria a su favor. En ésta expuso que no había controversia de hechos en relación con los bienes pertenecientes a la comunidad existente entre la señora Meléndez Berríos y él. Alegó que era igualmente un hecho no controvertido el pago realizado por el señor Maldonado Dieppa de las contribuciones sobre la. propiedad desde 1998 hasta la presentación de la solicitud, a pesar de no haber disfrutado de la propiedad. Por último, indicó que el valor del uso en el mercado de la propiedad en cuestión era de cuatrocientos dólares.
Como cuestión de derecho, modificó su postura inicial y apuntó que se le debía resarcir las rentas por el uso exclu-sivo que tuvo la señora Meléndez Berríos de la propiedad desde el 24 de abril de 2002, fecha cuando solicitó por pri-mera vez la división de la comunidad existente, hasta la fecha de la liquidación de los bienes en común.
Por su parte, la señora Meléndez Berríos también soli-citó una sentencia sumaria a su favor. Estableció esencial-mente los mismos hechos no controvertidos que estableció el señor Maldonado Dieppa en su solicitud.(2) Argüyó, no obstante, que no estaba obligada a pagar renta alguna al señor Maldonado Dieppa, pues era comunera tal como él y todo comunero tiene el derecho al uso y disfrute de la pro-piedad en común. Indicó que no le impidió el uso de la propiedad al señor Maldonado Dieppa, sino que éste se au- *1011 toexcluyó del disfrute de la propiedad al contraer nuevas nupcias. En la alternativa alegó que, de determinarse que debía pagar renta, los cánones procedían desde que el se-ñor Maldonado Dieppa realizó un requerimiento formal del pago éstas, es decir, desde el momento cuando éste pre-sentó la reconvención.
El Tribunal de Primera Instancia emitió una sentencia sumaria a favor de la señora Meléndez Berríos. En relación con la controversia sobre la renta de la propiedad, deter-minó que, en efecto, la señora Meléndez Berríos estaba obligada a compensar al señor Maldonado Dieppa por el uso exclusivo que tuvo de la propiedad. Indicó, no obstante, que este crédito debía satisfacerse desde el 6 de abril de 2005, fecha cuando el señor Maldonado Dieppa presentó la reconvención en la cual solicitó formalmente el pago de las rentas, hasta el momento cuando se liquidara la comu-nidad. (3)
Inconforme con dicho dictamen, el señor Maldonado Dieppa recurrió al Tribunal de Apelaciones. Este foro con-firmó el dictamen del Tribunal de Primera Instancia. Re-solvió que, distinto a Díaz v. Aguayo, 162 D.P.R. 801 (2004), en este caso la recurrida señora Meléndez Berríos permaneció soltera y no excluyó ni privó al peticionario de su derecho al uso de la residencia, sino que éste se autoex-cluyó al contraer nuevas nupcias. Indicó, además, que de las cartas en las cuales el señor Maldonado Dieppa alegaba que había realizado un requerimiento para el pago de cá-nones, no surgía un reclamo expreso de rentas ni un reque-rimiento de desalojo a la señora Meléndez Berríos. Por lo tanto, ordenó el pago de los cánones, que habrían de com-putarse desde la fecha cuando el señor Maldonado Dieppa presentó su reconvención.
*1012 Inconforme aún, el señor Maldonado Dieppa acude ante este foro para argüir que:
Erró el Tribunal de Apelaciones, al entender que el crédito por rentas por uso exclusivo de un bien común debe compu-tarse al ser reclamado en acción judicial. En consecuencia también erró el TPI al determinar que el crédito de rentas es reclamable y debe ser computado a partir de la fecha de radi-cación de la reconvención y no desde su reclamo en el año 2002.
Erró el Tribunal de Apelaciones, al determinar que la recu-rrida no excluyó al recurrente de la posesión del inmueble. Petición de certiorari, pág. 5.
El 19 de octubre de 2007 expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes en el litigio, procedemos a resolver.
II
La sociedad de gananciales es el régimen económico su-pletorio que establece el Código Civil para gobernar las ganancias o los beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el matrimonio, en au-sencia de capitulaciones matrimoniales. Arts. 1267 y 1295 del Código Civil, 31 L.P.R.A. sees. 3551 y 3621. Su funcio-namiento está codificado en los Arts. 1295-1326 del Código Civil, 31 L.P.R.A. sees. 3621-3701. En un matrimonio re-gido por la sociedad de gananciales, se presumen comunes todos los bienes adquiridos por los cónyuges durante la vi-gencia de éste. Art. 1307 del Código Civil, 31 L.P.R.A. see. 3647. La administración de los bienes de la sociedad co-rresponde a ambos cónyuges por ser codueños de la totali-dad del patrimonio matrimonial, sin distinción de cuotas. Montalván v. Rodríguez, 161 D.P.R. 411, 420 (2004).
Al disolverse el matrimonio, por divorcio o muerte de uno de los cónyuges, se extingue la sociedad de gananciales. Art. 1315 del Código Civil, 31 L.P.R.A. see. 3681. Dicha disolución conlleva el nacimiento de una co- *1013 munidad de bienes ordinaria entre los ex cónyuges, que regirá hasta el momento de la liquidación y división de la antigua sociedad de bienes gananciales. Residentes Sa-grado Corazón v. Arsuaga, 160 D.P.R. 289, 305 (2003); Soto López v. Colón, 143 D.P.R. 282, 287 (1997).
A esta comunidad de bienes, o según llamada en la doc-trina comunidad post ganancial, le aplican los Arts. 326-340 del Código Civil, 31 L.P.R.A. sees. 1271-1285, en au-sencia de disposiciones especiales o pacto entre los ex cónyuges. Residentes Urb. Sagrado Corazón, supra, pág. 306; Bidot v. Urbino, 158 D.P.R. 294 (2002). Esta comuni-dad estará integrada por los bienes que en el momento de la disolución de la sociedad de gananciales constituían el activo de la masa común. J. J. Rams Albesa, La sociedad de gananciales, Madrid, Ed. Tecnos 1992, pág. 418.
En esta controversia se cuestiona el momento a partir del cual un integrante de una comunidad post ganancial está obligado a satisfacer rentas al otro comunero, su ex cónyuge, por el uso exclusivo de la propiedad que una vez fue la residencia conyugal. Por no existir disposiciones es-peciales que resuelvan esta controversia, y a falta de pac-tos expresos entre los ex cónyuges, resolveremos esta con-troversia a la luz de los artículos del Código Civil pertinentes a la comunidad de bienes.
III
A. Una comunidad de bienes existe cuando la propie-dad de una cosa o un derecho pertenece pro indiviso a va-rias personas. Art. 326 del Código Civil, 31 L.P.R.A. see. 1271. Como dice Castán, existe comunidad siempre que un derecho o conjunto de derechos está atribuido a una plura-lidad de sujetos, correspondiéndole en común. J. Castán Tobeñas, Derecho Civil español, común y foral, 14ta ed., Madrid, Ed. Reus, 1992, T. II, pág. 459. El Código Civil establece que la participación de cada uno de los comune- *1014 ros en la cosa común será en proporción a sus respectivas cuotas, tanto en los beneficios como en las cargas. Art. 327 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1272. Este derecho de los copropietarios se refiere a toda clase de uti-lidades que puedan suponer un incremento de la cosa, tales como frutos naturales o accesiones naturales, o un in-cremento puramente económico del valor del capital de la cosa, como aumentos de su valor. J. Beltrán de Heredia y Castaño, La comunidad de bienes en derecho español, Madrid, Ed. Rev. Der. Privado, 1954, pág. 235.
En relación con el uso y disfrute de la cosa común, asunto de especial interés para la presente controversia, el Art. 328 del Código Civil, 31 L.P.R.A. see. 1273, establece que:
Cada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los co-partícipes utilizarlas según su derecho.
Este precepto promulga que cada copropietario tiene el derecho a usar y disfrutar de las cosas comunes, conforme a su derecho de propiedad, conjuntamente con los demás copropietarios. Beltrán de Heredia, op. cit., pág. 231. Se trata, según Castán, de un uso simultáneo, pero recíproca-mente limitado de todos los condueños. Castán Tobeñas, op. cit., pág. 523. Ciertamente, el uso de la cosa común no puede efectuarse en perjuicio de los demás condueños. J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1973, T. Ill, Vol. 2, pág. 25, citando la Sentencia del Tribunal Supremo de España de 17 de enero de 1968. El Código Civil establece tres parámetros o lími-tes para el uso de la cosa común, de forma que no se per-judiquen los derechos de los comuneros.
El primero se refiere a que la cosa debe usarse conforme a su destino. Como bien se discute en la doctrina, el destino de la cosa puede referirse a varios supuestos. Puede tra-tarse del destino natural de la cosa; puede ser el destino *1015 que las partes, por mutuo acuerdo, hayan determinado para la cosa, o el destino que la cosa tenga que cumplir, según el tráfico jurídico. Beltrán de Heredia, op. cit., pág. 232. Diez-Picazo y Gullón añaden que al hablar de “desti-no”, el Código se refiere, por supuesto, al destino económico de la cosa. L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed., Madrid, Ed. Tecnos, 1997, Vol. III, pág. 82. Puesto que es posible que la cosa tenga varios destinos, cabe que se use de variadas maneras. A falta de un pacto expreso o tácito entre los comuneros, el uso que haga de la cosa alguno de los comuneros será válido siempre que éste quepa en las posibilidades delimitadas por su naturaleza o por el tráfico jurídico. J.M. Miquel González, en M. Albala-dejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1985, T. V, Vol. 2, pág. 74.
El segundo límite impuesto por el Código Civil es que el uso no perjudique el interés de la comunidad. Este límite, según algunos tratadistas, tiene una relación íntima con el primero y se refiere a que el uso que realice uno de los comuneros no puede ir por encima de la suma de los inte-reses de cada uno de ellos. Beltrán de Heredia, op. cit., pág. 233. Es decir, no se trata de un interés distinto, superior al de cada uno de los copropietarios, pues la comunidad no es más que el total de cada uno de sus miembros. Por lo tanto, el interés de la comunidad es aquel de la mayoría de los comuneros, el cual sobrepasa el interés particular del co-munero usuario.(4) Miquel González, op. cit., pág. 75; Diez-Picazo y Gullón, op. cit.
Por último, el Código establece que el uso de la cosa común por uno de los comuneros no puede impedir el uso a los demás, según su derecho. Es el límite más importante de los tres discutidos, pues regula precisamente la figura de la copropiedad; es decir, el que varios sujetos ostenten el *1016 mismo derecho. Beltrán de Heredia, op. cit, pág. 233. An-teriormente hemos resuelto que un comunero no puede usar o disfrutar de manera exclusiva de un bien comunita-rio, sin pagar a los demás comuneros por este beneficio privativo. Díaz v. Aguayo, supra, pág. 811; De la Fuente v. A. Roig Sucrs., 82 D.P.R. 514, 534 (1961).
En los casos citados, no obstante, no atendimos especí-ficamente esta controversia. Siendo el uso y disfrute de la cosa una de las prerrogativas clásicas del derecho de domi-nio, que en el caso del condominio corresponde a cada uno de los copropietarios, ¿desde qué momento se entiende que el uso que hace uno de los comuneros es en su propio be-neficio, por lo que está obligado a compensar a los demás? Veamos.
B. La regulación del uso tiene una dificultad intrín-seca, pues cada uno de los comuneros tiene el derecho a usar toda la cosa, por lo que generalmente se requiere una coordinación entre éstos para la consecución de dicho fin. Beltrán de Heredia, op. cit., pág. 238; Miquel González, en Albaladejo, op. cit, pág. 76. Así, se establece que cuando no quepa el uso simultáneo de la cosa, los comuneros establez-can pactos o acuerdos que regulen el uso y disfrute de la cosa a base de turnos entre éstos. M. Albaladejo, Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1976, T. Ill, Vol. I, pág. 390; Beltrán de Heredia, op. cit., pág. 239. Este sis-tema permite el uso sucesivo de la cosa sin límites de can-tidad o extensión, sino sólo en cuanto al tiempo. Beltrán de Heredia, op. cit., pág. 240.
Cuando existe una reglamentación sobre el uso de la cosa, la violación de este acuerdo por uno de los copropie-tarios conllevaría la responsabilidad frente a los demás. Sin embargo, en ausencia de reglamentación, es la opinión de la doctrina que la extralimitación en el uso de la cosa, por sí sola, no constituye un uso ilícito de ésta que conlleve una responsabilidad frente a los otros copropietarios. Bel-trán de Heredia, op. cit., pág. 241. Así lo entiende José *1017 María Miquel González, quien atiende específicamente el asunto que tenemos ante nuestra consideración por lo que citamos in extenso:
... ¿A partir de qué momento el comunero que use más allá del límite de su cuota incurre en responsabilidad frente a los de-más? O mejor y antes, ¿a partir de qué momento el uso puede considerarse sin causa, o injusto o ilícito? No parece que el propio comunero sea quien deba ponerse el límite, a falta de una reglamentación del uso; de modo que si el partícipe viene usando más que los demás, aunque tal uso fuera incompatible con el de los otros, eso por sí solo no lo convierte en un uso sin causa, sin justificación o ilícito, de modo que pueda dar lugar a una acción de enriquecimiento o de resarcimiento del daño. Para ello parece necesario infringir una reglamentación espe-cífica del uso, o un requerimiento —caso de no existir aqué-lla— del comunero lesionado por el uso incompatible con su derecho. En otro caso, a falta de cualquiera de ellos, en sus respectivos supuestos, no podría considerarse ni un uso injus-tificado, a los efectos de enriquecimiento, ni un uso ilícito, a los efectos de resarcimiento de daños. (Enfasis suplido.) González en Albaladejo, op. cit., pág. 73.
Como vemos, este tratadista entiende que el mero uso de una forma exclusiva de la cosa común por parte de uno de los comuneros no supone un uso ilícito que requiera un resarcimiento por daños a los demás copropietarios. Para esto, será necesario que dicho comunero infrinja una regla-mentación específica de uso o a falta de ésta, que haya un requerimiento del comunero afectado o lesionado para que se le permita usar la cosa o, en su caso, para que se le comience a resarcir por el uso exclusivo de la cosa.
Este raciocinio nos convence, pues el límite que impone el Código Civil es el que no se le impida al otro comunero el derecho al uso y disfrute, según el derecho ostentado. Por lo tanto, para que se entienda ilícito tendría que demos-trarse que la extralimitación del uso, en efecto impidió al otro comunero el uso, según su derecho. Es decir, es la idea del perjuicio que se pueda ocasionar a los demás copropie-tarios el límite efectivo y concreto a la extralimitación en el uso. Beltrán de Heredia, op. cit.
*1018 Así pues, la determinación de cuándo debe comenzar el pago de un canon o una renta por parte de un copropietario a los demás, como medida de responsabilidad frente a éstos por el uso exclusivo de una cosa, es esencialmente una cuestión de hechos que se habrá de establecer caso a caso. El comienzo del uso exclusivo de la cosa por uno sólo de los comuneros, por sí solo, no puede ser el momento a partir del cual surge la obligación de un comunero de satisfacer rentas a los otros por dicho uso. Ese uso es compatible con el derecho de dominio que tiene cada uno de los copropietarios. En ausencia de la violación de un pacto o una reglamentación específica de uso establecido por los comuneros, aquel que entienda que el uso exclusivo de la cosa por otro comunero es incompatible con su propio de-recho, tendrá que requerir al otro el uso de la cosa o del pago de la renta o del canon por el uso exclusivo y a partir de ese requerimiento nacerá la obligación de resarcir.
C. En su alegato, el peticionario arguye que exigir un requerimiento para el pago de rentas es incompatible con lo resuelto en Díaz v. Aguayo, supra. Indica que, en ese caso, se ordenó el pago de rentas desde que el comunero comenzó a hacer uso exclusivo de la propiedad en común. Por lo tanto, entiende que tiene un derecho al pago de ren-tas desde que su ex cónyuge comenzó a poseer exclusiva-mente la propiedad, pero está dispuesto a reclamar sólo desde que requirió extrajudicialmente la división de la comunidad. Entendemos que la lectura que el peticionario hace de Díaz no toma en consideración los hechos a los cuales nos enfrentamos en aquella ocasión.
En Díaz v. Aguayo, supra, el señor Aguayo Leal y la señora Díaz Lizardi adquirieron una residencia en común pro indiviso cuando éstos eran novios. La relación de no-viazgo terminó sin que hicieran uso de la residencia común. Al año de concluir el noviazgo, el señor Aguayo Leal contrajo nupcias con otra joven y se mudó con ésta a la residencia común de éste y de la señora Díaz Lizardi. Al *1019 año de ese acto, la señora Díaz Lizardi presentó una acción de división de comunidad de bienes y solicitó una renta por el tiempo en que el señor Aguayo Leal hizo uso exclusivo de la residencia junto a su esposa. Resolvimos en esa ocasión que procedía que el señor Aguayo Leal pagara una renta por el uso de la propiedad desde el momento cuando se mudó a ella con su nueva esposa. Resolvimos de esa ma-nera, pues entendimos que el acto del señor Aguayo Leal de mudarse con su esposa constituyó una exclusión de la señora Díaz Lizardi del uso de la propiedad y, por lo tanto, le impidió a ésta su uso. Entendimos que, bajo aquellos hechos, no podíamos concluir que la señora Díaz Lizardi hubiese consentido a que su propiedad fuera utilizada por el señor Aguayo Leal y su esposa, desde que se mudaron a ella hasta que se presentó la acción de división. Probable-mente el resultado hubiese sido distinto si el señor Aguayo Leal se hubiese mudado solo a la propiedad. Véase Díaz v. Aguayo, supra, pág. 821 (opinión de conformidad, Juez Presidente Hernández Denton).
Así pues, son asuntos distintos los que se dilucidan en este caso, frente a los que se dilucidaron en Díaz v. Aguayo, supra. En aquel caso, hubo una clara exclusión de uno de los comuneros de la propiedad en común. Por lo tanto, desde el momento de la exclusión, surgió el derecho del otro comunero de recibir una renta por el uso exclusivo de la propiedad, pues desde ese momento se le impidió el uso de la cosa en común.
En este caso, se trata del uso exclusivo que hace un ex cónyuge de la residencia que una vez fue conyugal, y que permanece en comunidad por no haberse liquidado la so-ciedad ganancial extinta con el divorcio. En casos como éste, en ausencia de un acto de exclusión, no se puede igua-lar el mero hecho del divorcio con la exclusión e impedi-mento de uso del cual habla el Código Civil en el Art. 328, supra, y que origina una acción de resarcimiento en forma de renta al otro comunero. En el orden de estado civil, el divorcio implica necesariamente la ruptura completa del *1020 vínculo matrimonial y la separación de propiedad y bienes entre los cónyuges. Art. 105 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 381. Sin embargo, dicha ruptura no puede ser catalogada como una exclusión de uno de los comuneros de la propiedad en común, en los términos del Art. 328, supra. Tenemos que tomar en consideración que, en estos casos, se trata de la residencia de la familia, y su atribución a uno sólo de los cónyuges no es equiparable a un acto de exclusión formal por parte de ese cónyuge al otro. Por esto, las rentas, si alguna hay que pagar al ex cónyuge por el uso de la residencia familiar, no se deberán, sino hasta que el ex cónyuge no residente realice un reque-rimiento de éstas.(5)
Así pues, en ausencia de prueba en contrario, se presu-mirá que el ex cónyuge no residente consintió tácitamente a que su ex cónyuge ocupara la residencia familiar exclu-sivamente, sin tener que pagar renta alguna hasta el mo-mento del requerimiento. Véase Díaz v. Aguayo, supra, pág. 814 esc. 2.
Con el beneficio de la normativa establecida, pasamos a resolver el caso de autos.
rv
El señor Maldonado Dieppa y la señora Meléndez Be-rríos se divorciaron en marzo de 1998. En marzo de 2005, la señora Meléndez Berríos presentó una demanda de división de comunidad de bienes. El señor Maldonado Die-ppa reconvino para solicitar rentas desde el momento cuando la hija menor de edad de ambos llegó a la mayoría de edad en el 2000.
*1021 Según establecido, un comunero tendrá derecho a reci-bir rentas por el uso exclusivo que de la propiedad hace otro comunero, cuando haya un acto específico de exclusión por parte del usuario a los demás. De no existir dicho acto, es necesario que el comunero lesionado realice un requeri-miento de pago por el uso exclusivo que realiza el otro comunero. En este caso, la señora Meléndez Berríos no ex-cluyó específicamente al señor Maldonado Dieppa del uso y disfrute de la propiedad en cuestión. Simplemente la se-ñora Meléndez Berríos, por acuerdo de las partes luego del divorcio, se quedó viviendo en la residencia conyugal junto a los tres hijos procreados durante la vivencia conyugal. El uso que hizo de la propiedad es conforme a su destino, no contravino el interés de la comunidad, ni impidió al señor Maldonado Dieppa que usara de la propiedad en común.
Por lo tanto, según lo discutido, las rentas por el uso exclusivo serán pagaderas desde que el ex cónyuge no re-sidente, en este caso el señor Maldonado Dieppa, las soli-citó a su ex cónyuge, la señora Meléndez Berríos. El Tribunal de Apelaciones resolvió que dicho momento fue al presentarse la reconvención por parte del señor Maldonado Dieppa. Este alega, sin embargo, que dicho momento se concretó en 2002, cuando en varias comunicaciones en las que se discutió la división de la comunidad, solicitó las ren-tas extrajudicialmente. Veamos.
El 24 de abril de 2002 el señor Maldonado Dieppa, a través de su representante legal, cursó una carta a la se-ñora Meléndez Berríos para solicitar la liquidación de la comunidad de bienes existente entre ellos. En dicho mo-mento no reclamó rentas por el uso exclusivo del inmueble. Luego, el 29 de julio de 2002 envió nuevamente una carta, esta vez a la representación legal de la señora Meléndez Berríos, en la cual ofreció la cantidad de $75,000 por la participación de la señora Meléndez Berríos en la comuni-dad, “tomando en consideración que el terreno fue una do-nación de su padre, que ella estuvo ocupando la residencia y el deterioro de la propiedad”. La señora Meléndez Berríos *1022 rechazó la oferta mediante carta de 27 de agosto de 2002 y realizó una contraoferta de $101,250.
Posteriormente, y en respuesta, el señor Maldonado Dieppa rechazó la contraoferta y expuso que “[l]a idea era llegar a un acuerdo razonable, tomando en consideración que [la señora Meléndez Berríos] ha estado en la posesión de la propiedad por espacio de siete (7) años”. Apéndice de la Petición de certiorari, pág. 81. La señora Meléndez Be-rríos respondió el 19 de noviembre de 2002, indicando que infería de la mención sobre la posesión de la propiedad por siete años que el señor Maldonado Dieppa estaba solici-tando un crédito por arrendamiento. Indicó que entendía que no procedía y que, de proceder, debía ser desde que la hija menor de edad alcanzó la mayoridad. Las partes con-tinuaron realizando ofertas y contraofertas para la liquida-ción de la comunidad de bienes hasta el 10 de marzo de 2005, cuando la señora Meléndez Berríos presentó la de-manda que originó la controversia.
El señor Maldonado Dieppa arguye que, de las expresio-nes contenidas en las cartas relacionadas anteriormente, surge una intención de requerir rentas de forma prospec-tiva por el uso exclusivo del inmueble por parte de la se-ñora Meléndez Berríos. No estamos de acuerdo. De dichas cartas lo que surge es la intención de que se tome en con-sideración el tiempo que la señora Meléndez Berríos utilizó el inmueble sólo para propósitos del cómputo de la cuota participativa de ésta en la comunidad. De esas expresiones no surge un requerimiento por parte del señor Maldonado Dieppa para que se le resarciera por el uso del inmueble, desde ese momento en adelante. Aunque es válido un re-clamo de rentas de forma extrajudicial con el propósito de recibirlas de manera prospectiva, entendemos que en este caso el señor Maldonado Dieppa no exteriorizó esa inten-ción hasta el momento cuando presentó la reconvención a la demanda instada en su contra, el 6 de abril de 2005.
Por lo tanto, resolvemos, al igual que lo hicieron los fo-ros inferiores, que la señora Meléndez Berríos está obli-gada a pagar renta por el uso exclusivo de la propiedad al *1023 señor Maldonado Dieppa desde el 6 de abril de 2005, fecha en la cual éste presentó la reconvención, para solicitarle a la señora Meléndez Berrios las rentas por el uso de la pro-piedad en común, hasta el presente.

 Los tres hijos del matrimonio se quedaron viviendo con la señora Meléndez Berríos al momento de la disolución del matrimonio en la residencia objeto de la controversia. De éstos, dos ya eran mayores de edad al momento del divorcio. Ni la sentencia de divorcio, ni algún otro documento en el expediente, hacen mención del otorgamiento o la petición del derecho a un hogar seguro.

 No hizo mención sobre las contribuciones de la propiedad, pagadas alegada-mente por el señor Maldonado Dieppa.

 La sentencia sumaria dictada por la ilustrada sala de instancia no hace mención sobre el crédito por el pago de contribuciones sobre la propiedad, alegado por el señor Maldonado Dieppa en su solicitud de sentencia sumaria. Sin embargo, dicho asunto no fue alegado ante el Tribunal de Apelaciones, por lo que no lo atendemos.

 Aquel que no esté de acuerdo con el uso al que la mayoría destina la cosa, siempre tiene a su haber la acción de división de la comunidad. M. Albaladejo, De-recho Civil, 2da ed., Barcelona, Ed. Bosch, 1976, T. Ill, Vol. I, pág. 390.

 Hacemos constar expresamente que no resolvemos en este caso, por no estar ante nuestra consideración, la interacción del derecho a un hogar seguro y de la obligación de alimentar con los intereses propietarios del cónyuge no residente y si procederían en ese caso el pago de rentas o los cánones al otro cónyuge durante el período en el cual la propiedad estuvo sujeta al derecho a hogar seguro o exista una obligación de alimentar.