ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **LUIS FERNANDO VILÁ CALDERÓN**<br><br>Peticionario<br><br><br>v.<br><br><br>**ALMA MAITE CANELA CASTILLO**<br><br>Recurrida | **KLCE202300654** | ***CERTIORARI***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br><br>Civil Núm.:<br>**BY2020CV03386 (502)**<br><br>Sobre:<br><br>**Liquidación de Comunidad de Bienes** |

Panel integrado por su presidenta la juez Cintrón Cintrón, la jueza Rivera Pérez y el juez Perez Ocasio.[1]

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de enero de 2024.

Comparece el señor Luis Fernando Vilá Calderón (en adelante Vilá Calderón o parte peticionaria) y solicita que revisemos la *Resolución* emitida y notificada el 17 de abril de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante TPI-Bayamón. En la misma, el Foro a *quo* incorporó a dicha Resolución como "normativa jurídica aplicable" los argumentos esbozados por la parte demandada.[2] La Peticionaria solicitó una *Reconsideración Parcial el 2 de mayo de 2023,*[3] y la misma fue denegada por el Foro Primario mediante *Resolución* el 8 de mayo de 2023 y notificada el 10 de mayo de 2023.[4]

---

[1] Véase Orden Administrativa OATA-2023-165 del 22 de septiembre de 2023, donde se designa al Juez Alberto Luis Pérez Ocasio en sustitución de la juez Eileen J. Barresi Ramos.
[2] Apéndice XIV del Recurso de *Certiorari, págs*. TA128-TA-123.
[3] *Id*. pág. TA-005-TA-030.
[4] *Id*. pág. TA-033.

La parte recurrida, la señora Alma Maite Canela Castillo, (en adelante Canela Castillo o parte recurrida), compareció ante nos el 26 de junio de 2023, donde se opone a la expedición del auto de *Certiorari*.

Por los fundamentos que se exponen a continuación, se expide el auto de *Certiorari* solicitado y *se revoca* la *Resolución* emitida por el Foro de Primera Instancia. Veamos.

**I.**

El 26 de febrero de 1999, a través de Escritura de Compraventa número veintinueve (29), ante la Licenciada Lesbia Hernández Miranda, Notaria, Vilá Calderón, estando soltero, adquirió la propiedad inmueble localizada en la Urbanización Parkville, Calle Jefferson K-14, en Guaynabo, Puerto Rico (en adelante el "Inmueble").[5] Posteriormente, Vilá Calderón y Canela Castillo contrajeron matrimonio el 25 de marzo de 2000 bajo el régimen económico de Sociedad Legal de Bienes Gananciales.[6] Durante el matrimonio, las partes adquirieron bienes e incurrieron en deudas, que actualmente se encuentran sujetas a liquidación. El vínculo matrimonial entre las partes quedó roto y disuelto por la causal de ruptura irreparable, a través de *Sentencia* dictada el 23 de septiembre de 2020, notificada el 30 de septiembre de 2020, en el caso *Alma Canela v. Luis Vilá*, Civil Núm. BY2020RF00811. Dicha Sentencia advino final y firme el 30 de octubre de 2020.[7]

Según surge del expediente, Vilá Calderón y Canela Castillo tomaron tres (3) préstamos durante su matrimonio para realizarle mejoras al inmueble y los mismos fueron pagados con dinero ganancial. También se emitieron pagos con dinero ganancial destinados al pago principal del préstamo hipotecario, intereses y la

---

[5] Apéndice X del Recurso de *Certiorari*, Informe de Conferencia con Antelación a Juicio, Estipulación de hecho # 5, pág. TA-076
[6] *Id.* hecho #1.
[7] *Id.* hecho #2.

cuenta "escrow" (que es utilizada para el pago de los impuestos sobre la propiedad (CRIM) y para el pago de los seguros de la propiedad).[8]

Luego de múltiples incidencias procesales que surgieron en el pleito de divorcio, entre otros menesteres que no es necesario mencionar, se desprende del expediente que Canela Castillo se quedó en el "Inmueble" por haberse designado la residencia como "Hogar Seguro" para el hijo menor de las partes.[9] A estos fines, Vilá Calderón se mantuvo pagando por concepto de pensión alimenticia, el monto del pago de la deuda hipotecaria, a razón de $1,434.85. Posteriormente, se declaró custodia compartida entre las partes, por lo que la designación de "Hogar Seguro" fue dejada sin efecto. Así las cosas, Canela Castillo continuó en la residencia y según decretado en el caso de divorcio *Alma Canela v. Luis Vilá*, Civil Núm. BY2020RF00811, las partes acordaron en corte abierta, que Canela Castillo asumiría por concepto de Renta el pago de la deuda hipotecaria por la cantidad de $1,434.85 y las cuotas de mantenimiento hasta que desalojara la propiedad.[10]

La controversia principal en este litigio abordó la argumentación del carácter privativo o ganancial de la propiedad y los créditos a los que tuvieran derecho si alguno por parte de Canela Castillo. Ante la discrepancia de poder llegar a un acuerdo, el Foro Primario pautó a una Vista Argumentativa para el 14 de abril de 2023.[11] Además de la Vista Argumentativa, las partes debían someter por escrito Memorando en Cumplimiento de Orden para sostener sus respectivas posiciones.[12]

---

[8] *Id.* Hecho 8,9 10,11, 12, 13,14, 15,16.
[9] Recurso de *Certiorari*, pág. 9. Inciso 18,19.
[10] *Id.* Inciso 20.
[11] Recurso de *Certiorari*, pág.11, inciso 8. Apéndice XI del Recurso de *Certiorari*, Minuta, pág. TA-098
[12] *Id.* pág. 12. Apéndice XIII del Recurso de *Certiorari*, pág. TA104-127, Apéndice XIV, pág. TA128-TA143

Celebrada la Vista Argumentativa, el TPI- Bayamón se reservó su determinación para remitirla por escrito y señaló Vista para Juicio en su Fondo, también en la espera de prueba documental que no estaba disponible en la plataforma de SUMAC. Vilá Calderón señala que, según la minuta de la Vista Argumentativa del 14 de abril de 2023, el TPI- Bayamón expresó:

> **En cuanto a la controversia, el Tribunal va a disponer con relación a la propiedad y los créditos que tenga la sociedad legal de gananciales.** Con relación al uso de la propiedad alegado por la entidad de Francachela, el Tribunal entiende que si se reclama algún crédito será materia de juicio, **por lo que se va a concentrar en la deuda hipotecaria, crédito que pueda haber en mejoras, si alguno, con relación al inmueble**.[13] (Énfasis suplido).

A estos efectos, mediante *Resolución*, el TPI- Bayamón determinó que la naturaleza del "Inmueble" es privativa, toda vez que fue adquirida previo a la constitución de la Sociedad Legal de Bienes Gananciales.[14] No obstante, incorporó "la normativa jurídica aplicable" según los argumentos esbozados por Canela Castillo en el Memorando de Cumplimiento de Orden.[15]

En lo pertinente, el Foro Primario incluye en dicha *Resolución* lo siguiente:

> Luego de considerar en su totalidad los argumentos esbozados, así como los respectivos memorandos de derecho, resolvemos lo siguiente:
>
> 1. **El inmueble residencial localizado en la urbanización Parkville de Guaynabo es de naturaleza privativa del demandante**. A pesar de que el entonces matrimonio convirtió el inmueble en su vivienda principal, **la propiedad no perdió su naturaleza privativa**.
>
> 2. Toda vez que hay dos (2) hipotecas constituidas durante el matrimonio, y pagadas con dinero ganancial, se reconoce a la sociedad legal de bienes gananciales unos créditos por: $200,000.00, respecto a la hipoteca constituida en el 2001; más $220,000.00, respecto a la hipoteca constituida en el 2003. Según estipulado por las partes, el total de esos

---

[13] *Id.* pág. 12 inciso 11. Apéndice XV, pág. TA144-TA146.
[14] *Id.* pág. 12 inciso 12. Apéndice I, págs. TA001-TA003,
[15] Apéndice XIV, págs. TA128-TA143.

créditos asciende a $309.535.19. **No se reconoce a la sociedad de gananciales un crédito por el pago de intereses por estar subsumidos en las mensualidades de los préstamos hipotecarios**.

3. Igualmente, se reconoce a la sociedad legal de gananciales un crédito por el pago de las contribuciones pagadas al Centro de Recaudación de Ingresos Municipales (CRIM), durante los períodos de las hipotecas aludidas hasta el divorcio; y también desde mayo de 2022 hasta el presente, cuando la demandada se ha hecho cargo del pago hipotecario. **Claro está, las partes deben evidenciar el pago del CRIM oportunamente en el juicio**.

4. Además, se reconoce a la sociedad legal de gananciales un crédito por el pago de cuotas de mantenimiento del inmueble desde el matrimonio y hasta la fecha divorcio. Se reconoce a la demandada un crédito por los pagos a las cuotas de mantenimiento que haya realizado con dinero privativo con posterioridad al divorcio. **Reiteramos que las partes deben evidenciar estos pagos oportunamente en el juicio**.

5. Con relación al pago mensual por el uso que ha hecho la demandada de la propiedad, resolvemos que no procede un crédito a favor del demandante por el pago de la hipoteca desde el divorcio o separación y hasta mayo 2022 toda vez que se trató de un pago equivalente a la pensión alimentaria para el hijo de la pareja. *Véase Díaz Rodríguez v. García,* 208 DPR 706 (2022). **Ahora bien, a partir de mayo de 2022 la situación cambió y la demandada -quien, a su vez, está haciendo uso del inmueble privativo- es quien paga la hipoteca por $1,434.85 mensuales.** En consecuencia, la demandada tiene un crédito equivalente a tales mensualidades pagadas desde mayo de 2022 y hasta que se dicte sentencia finalmente. **Adviértase que no existe prueba en autos sobre el valor de un canon de arrendamiento por el uso exclusivo que la demandada le ha dado al inmueble. Por supuesto, ese aspecto podrá ser materia de juicio.**

6. Con relación a la posible renta, si alguna, que debe pagar Fancachela Corporation, por operar alegadamente desde la propiedad en controversia, resolvemos que se trata de una controversia de hechos que debe ser objeto de prueba durante el juicio. La demandada es coordinadora de eventos, por lo que su negocio no se desarrolla en un lugar en específico. En todo caso, aparentemente hay un uso incidental del inmueble, como cualquier persona que realiza

trabajo desde su vivienda, sin que ello conlleve establecer allí su oficina principal o su lugar de negocios. **No obstante, el Tribunal carece de elementos suficientes en esta etapa para llegar a semejante conclusión y, por ende, según adelantamos en la vista argumentativa, el asunto se adjudicará una vez ambas partes tengan oportunidad de presentar la evidencia correspondiente en el juicio**.

7. Ambas partes coinciden en que el inmueble fue objeto de mejoras sustanciales, tanto así que hasta cambiaron el piso de la vivienda. Las mejoras se sufragaron en su mayoría con el importe de los préstamos hipotecarios que los entonces cónyuges tomaron durante la vigencia del matrimonio. Las partes coincidieron en que hay una diferencia de $35,000.00 aportados por la sociedad de gananciales para las mejoras, en exceso al importe de las hipotecas. **El Tribunal reconoce un crédito a la sociedad legal de gananciales de $35,000.00 por las mejoras al inmueble.**

8. **Se incorpora por referencia la discusión sobre la normativa jurídica aplicable esbozada por la parte demandada en las páginas 8 al 14 de su memorando de derecho. Véase entrada 50 en el SUMAC.**

9. **Con relación a aquellos asuntos sobre los cuales hemos mencionado que ameritan el desfile de prueba durante el juicio, noten que dicha prueba podrá presentarse siempre que se trate de evidencia anunciada como parte del descubrimiento de prueba**. Como bien las partes conocen, el descubrimiento de prueba finalizó y no será reabierto. Además, tuvieron una amplia oportunidad para intercambiar evidencia, por lo que no se retornará a esa etapa procesal.

10. Finalmente, según lo hicimos durante la vista argumentativa, conminamos nuevamente a las partes a dialogar en aras de evaluar posibles alternativas para finiquitar el pleito por la vía transaccional pues, indudablemente, el caso tiene urdimbres emocionales inescapables que les afectan tanto a ellos como a su hijo.

El 2 de mayo de 2023, la parte peticionaria solicitó al Foro Primario mediante una *Moción de Reconsideración Parcial* el dictamen del TPI- Bayamón. [16] Esta fue declarada "No ha Lugar"

---

[16] Apéndice II, págs. TA004-TA020.

mediante *Resolución* emitida el 8 de mayo de 2023 y notificada a las partes el 10 de mayo de 2023.[17]

Inconforme con el proceder del Foro Primario, en su recurso, la parte peticionaria le imputa al TPI-Bayamón los siguientes señalamientos de errores:

> **PRIMERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL HACER DETERMINACIONES DISPOSITIVAS SIN RECIBIR EVIDENCIA PARA SOSTENERLAS, EXCEDIENDO EL ACUERDO DE RECIBIR MEMORANDOS DE DERECHO SOBRE LA MANERA EN COMO SE INTERPRETARÍA DESDE EL PUNTO DE VISTA EN DERECHO LOS RECLAMOS Y LOS CRÉDITOS QUE PUEDAN TENER LAS PARTES CON RELACIÓN AL INMUEBLE DEL SEÑOR VILÁ DURANTE LA RELACIÓN, PREVIO AL JUICIO.

> **SEGUNDO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL UTILIZAR COMO "NORMATIVA JURÍDICA APLICABLE", LA ARGUMENTACIÓN LEGAL DE LA SEÑORA CANELA, LO QUE NO CONSISTE EN UNA DISCUSIÓN OBJETIVA; EN VEZ DE LA PROPUESTA DE ADOPTAR LO RESUELTO POR ESTE HONORABLE TRIBUNAL DE APELACIONES EN EN (SIC) EL CASO DE MÉNDEZ VÁZQUEZ V. MARTÍNEZ GARCÍA, KLAN201900815, SENTENCIA DEL 27 DE AGOSTO DE 2019, U OTRO CASO ANÁLOGO.

La parte recurrida compareció el 26 de junio del 2023 con su Recurso de Oposición.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. *Certiorari***

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023);

---

[17] Apéndice III, pág. TA033

*Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 285 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La mencionada regla expone los criterios que esta Curia deberá

considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Rivera Gómez y otros v. Arcos de Dorados Puerto Rico, Inc. y otros*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008);

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra, pág. 849. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa, evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluara tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para

determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Finalmente, precisa señalar que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen, cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Al contrario, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martínez v. Torres Ghigliotty*, supra, pág. 98.

### B.    Sociedad Legal de Bienes Gananciales

La Sociedad Legal de Bienes Gananciales, (en adelante SLG), comienza el mismo día en que se celebra el matrimonio.[18] Ésta es una entidad económica familiar *sui géneris* que, por ser su propósito principal y razón de ser, diferentes a las de otras empresas, comunidades o sociedades regulares; no tiene el mismo grado de

---

[18] Se hace referencia a los artículos del Código Civil de Puerto Rico, 1930, 31 LPRA, hoy, derogado ya que son los artículos aplicables a los hechos del caso. Cód. Civ. PR 31 LPRA sec. 3661.

personalidad jurídica que las sociedades ordinarias o entidades corporativas. *García v. Montero Saldaña*, 107 DPR 319, 322 (1978); *Reyes v. Cantera Ramos, Inc.*, 139 DPR 925, 928–929(1996).  Pues según expresa nuestro Más Alto Foro, "*Contraído el matrimonio bajo el régimen de la sociedad legal de gananciales, la gestión económica que realiza cada cónyuge se hace en beneficio de dicha sociedad y no para beneficio individual.*" (Citas omitidas). *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978, (2010)

De la misma forma, "se reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer".[19]   Por un lado, el artículo 1304 del Código Civil de Puerto Rico, 1930, en adelante Código Civil,[20] establece que: "las expensas útiles hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer, son gananciales. Lo serán también los edificios construidos durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca".[21]

El Tribunal Supremo de Puerto Rico ha sido enfático en sostener que:

> Por "expensas útiles" debe entenderse "todo gasto que produzca utilidad o aumento de valor a los bienes de los cónyuges, en cualquier concepto que sea, ya constituya verdadera mejora útil o de mero recreo", ya consista en reparaciones que no constituyan obligación de la sociedad, o en cualquier otro beneficio no obligatorio para esa sociedad. **Se trata aquí de capital ganancial que se utiliza en interés de los bienes privativos de cualquiera de los cónyuges; capital que no se pierde, sino que se transforma en un crédito a favor de la sociedad ganancial contra el cónyuge de que se trate**. Dicho crédito se recuperará al momento de la liquidación de dicha sociedad de gananciales según surge del art. 1317 C.C.
>
> *Muñiz Noriega v. Muñoz Bonet*, supra, pág. 979-980. (Énfasis suplido).

---

[19] 31 LPRA sec. 3647.
[20] Se hace referencia a los artículos del Código Civil de Puerto Rico, 1930, 31 LPRA, hoy, derogado ya que son los artículos aplicables a los hechos del caso. Cód. Civ. PR 31 LPRA sec. 3661.
[21] 31 LPRA sec. 3644.

Por otro lado, el Artículo 1308 del Código Civil establece como obligaciones de la SLG, lo siguiente, pero sin limitarse:

> (1)las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges; (2) **los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales**; (3) **las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges**;[22] (4) **las reparaciones mayores o menores de los bienes gananciales;** (5) el sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges, y **(6) los préstamos personales en que incurra cualquiera de los cónyuges**. 31 LPRA, sec. 6981.
>
> *Muñiz Noriega v. Muñoz Bonet*, supra, pág. 982. (Énfasis suplido).[23]

## C. Comunidad Post Ganancial

Ahora bien, estas deudas y obligaciones no deben catalogarse gananciales luego de presentada la demanda de divorcio. Señala el Tribunal Supremo de Puerto Rico que "[e]l divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges".[24] De esa manera, surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente y alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Montalván v. Rodríguez*, 121 DPR 411, 421 (2004).

Como parte del proceso de liquidación de la SLG, el Tribunal Supremo de Puerto Rico ha pronunciado que:

> [...]se procederá a su división por partes iguales entre ambos excónyuges o sus sucesiones en interés. A esta cantidad o valor final, a ser dividido por mitad, se llega después de deducir y adjudicar los créditos correspondientes a cada uno. Lo anterior conlleva la necesidad de identificar aquellos bienes que corresponden privativamente a cada uno de los

---

[22]Las reparaciones mayores no serán a cargo de la sociedad. 31 LPRA sec. 3661.
[23]Hacemos constar, que a pesar de que los hechos ocurrieron bajo el Código Civil,1930, 31 LPRA 3661, hoy derogado, el Código Civil, 2020, 31 LPRA sec. 6981, mantuvo inalterado las disposiciones de la Responsabilidad de la SLG en su artículo 520, 31 LPRA sec. 6981.
[24] 31 LPRA sec. 381

> excónyuges, así como aquella parte de los bienes comunes que se haya utilizado para beneficio exclusivo de uno de los comuneros y de las responsabilidades imputables al caudal común. En términos generales, la liquidación se puede resumir en tres operaciones: (1) formación de inventario con avalúo y tasación; (2) determinación del haber social o del balance líquido partible, y (3) división y adjudicación de los bienes gananciales.
>
> *Montalván v. Rodríguez*, supra, pág. 457.

Cuando la comunidad de bienes postganancial no es liquidada simultáneamente en el divorcio, adviene un período en el que se mezclan y confunden provisionalmente los bienes de los excónyuges, ya sea porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren pérdidas y gastos. Así, la presunta igualdad de cuotas está sujeta a ser rebatida por una prueba pertinente. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 707 (2022). **El goce exclusivo de uno de los comuneros afecta el derecho de disfrute que tiene el otro comunero sobre los bienes que pertenecen a estos**. *Id.* pág. 707. (Énfasis suplido).

Adviértase que, "aun cuando se mantiene la indivisión de la comunidad de bienes postganancial por cierto tiempo después del divorcio, *su liquidación no tiene que ser automáticamente por partes iguales*. En estos casos, la presunción legal que dispone nuestro ordenamiento civilista de que esa división debe hacerse en partes iguales, *la puede rebatir cualquiera de los excónyuges si se demuestra que el aumento en el valor del bien común o en el nivel de producción de los frutos industriales, se debe a la gestión y trabajo de uno solo de los comuneros. Montalván v. Rodríguez,* supra, pág. 439. (Énfasis suplido). Una vez disuelto un matrimonio, concluye la sociedad legal de gananciales. Es entonces cuando nace una comunidad de bienes, de la cual los excónyuges son comuneros hasta que se liquide la sociedad. La comunidad de bienes, que así surge, no se rige por las normas de la sociedad de gananciales sino

por las normas referentes a la copropiedad. *Bidot v. Urbino*, 158 DPR 294 (2002).

Ahora bien, establecido lo anterior, el Tribunal Supremo de Puerto Rico ha establecido que:

> [...] al momento de disolverse la sociedad de gananciales subsisten sus activos y pasivos, pero en renglones separados, pendientes de liquidación. Si esta última operación se pospone, el monto de los activos y pasivos puede variar; pueden producirse frutos, saldarse deudas, sufrirse pérdidas, obtenerse ganancias o incurrirse en gastos con relación al caudal común. **Por consiguiente, en la adjudicación final de la participación que le corresponde a cada excónyuge, debe *tomarse en consideración, de acuerdo con la evidencia sometida, si uno de los ex cónyuges puede interponer frente al otro un crédito por los cambios y las operaciones que ocurrieron en el haber común.*** *Igualmente, conforme se dispone en el Art. 328 del Código Civil, 31 LPRA sec. 1273,* **hay que considerar cualquier efecto adverso que cualquiera de los excónyuges cause al haber común.**
>
> *Montalván v. Rodríguez,* supra, pág. 423-424. (Énfasis suplido).

Es decir, sobre esta particularidad de los créditos que sean solicitados, solo deberá concederse cuando haya evidencia que sostenga tal solicitud.

## III

La parte peticionaria recurre ante nos, solicitando que dejemos sin efecto la *Resolución* emitida por el TPI-Bayamón dictada el 17 de abril de 2023.[25] De la misma manera nos plantea dos (2) errores, que discutiremos a continuación y por estar intrínsecamente atados, los discutiremos en conjunto.

La parte peticionaria recurre ante este Tribunal, arguyendo que erró el TPI-Bayamón al hacer determinaciones dispositivas sin evidencia para sostenerlas, excediendo el acuerdo de recibir memorandos de derecho sobre la manera en cómo se interpretaría el derecho sobre los reclamos y créditos que puedan tener las partes con relación al inmueble de Vilá Calderón. *Le asiste la razón.*

---

[25] Apéndice I del Recurso de *Certiorari,* pág. TA001-003

Por otro lado, Vilá Calderón señala que erró el Tribunal de Primera Instancia al utilizar como "normativa jurídica aplicable", la argumentación legal de la señora Canela, lo que no consiste en una discusión objetiva; en vez de la propuesta de adoptar lo resuelto por este Honorable Tribunal de Apelaciones en en (sic) el caso de Méndez Vázquez v. Martínez García, KLAN201900815, sentencia del 27 de agosto de 2019, u otro caso análogo. *Le asiste la razón.*

Desde que comenzó el litigio de divorcio, la parte peticionaria sostiene el carácter privativo de la propiedad que él compró y así surge como un hecho que no está en controversia.[26] Por otro lado, la parte recurrida sostuvo, y al presente insiste en sostener que la propiedad en cuestión "debería considerarse ganancial". A estos efectos exige una serie de créditos, porque a su entender la extinta sociedad Vilá Canela se constituyó y se mantuvo allí por alrededor de casi 20 años.

Ante esta disyuntiva, el Foro a *quo* recibió el insumo a petición de ambas partes mediante Memorandos de Derecho. A estos fines el TPI-Bayamón consideró sendos Memorandos de Cumplimiento presentados de manera simultánea. Esto fue documentado en la *Minuta* de la vista celebrada el 8 de diciembre de 2022. Posteriormente el Foro Primario celebró una Vista Argumentativa, y cabe destacar que según se desprende de la minuta de la Vista Argumentativa, el 14 de abril de 2023, los argumentos que se desglosan según vertidos, han sido los mismos desde que se generó la controversia.[27]

Así las cosas, el 17 de abril de 2023, el TPI-Bayamón emitió la *Resolución* recurrida, donde resumió parte de los hechos que no están en controversia sobre lo que constituyó el extinto matrimonio Vilá Canela. Expuso brevemente una controversia sobre una

---

[26] *Id.*
[27] Apéndice XV del Recurso de *Certiorari,* pág. TA144-146

corporación perteneciente a la recurrida, que no es óbice de este recurso, por lo que no intervenimos en ella. También abunda sobre las múltiples hipotecas que sufrió el *"Inmueble"* durante los años que se constituyó el matrimonio y la procedencia de los fondos que emitieron dichos pagos.

Dentro de las diez (10) determinaciones emitidas en la *Resolución,* la determinación número uno (1), es la única estipulación sobre el estado del *"Inmueble".* Por otro lado, las determinaciones emitidas en el tres (3), cuatro (4), cinco (5) y seis (6), el Foro a *quo* reconoce créditos indistintamente de las partes, entiéndase el peticionario, la recurrida o a la SLG. No obstante, puntualiza que dichas materias *serán objeto de prueba.* Ciertamente se contradice el TPI- Bayamón en estipular hechos que serán objeto de prueba.

Por otro lado, la determinación número dos (2), no le reconoce crédito alguno a la SLG por el pago de los intereses emitidos a través de las Hipotecas "por estar subsumidos en las mensualidades dentro de los préstamos hipotecarios". En este hecho en particular, contrastando la estipulación número cinco (5), donde le concede créditos a la recurrida a partir de mayo del año 2022, aunque previamente según el caso de divorcio, se estableció que estos pagos eran en concepto de renta. Ciertamente es contradictorio otorgarle un crédito a la recurrida, que inicialmente no se concedió a la SLG por "estar subsumidos en el pago", si está emitiendo pagos en carácter de renta, por lo que tampoco debe considerarse una estipulación del Tribunal *por ser materia de prueba.*

Sobre la determinación número seis (6) referente a la corporación de la recurrida, deberá desfilarse prueba a los efectos de adjudicar créditos a favor del peticionario, toda vez que no nos encontramos en posición para poder emitir decisión alguna y es materia de desfile de prueba.

Sobre la determinación número siete (7) del TPI-Bayamón, el Foro Primario adjudicó un crédito de $35,000.00 a la SLG por mejoras al "*Inmueble*". Sin embargo, de la evidencia de autos, no podemos concluir de donde se desprende dicha cantidad, toda vez que en ausencia de una adjudicación propiamente, la determinación de dicha cantidad resulta huérfana de evidencia que la sustente.

Por otro lado, en el inciso nueve (9) reconoce que hay cuestiones sustanciales que están sujetas a desfile de prueba durante el juicio y en el inciso diez (10) expone que exhorta a retomar el diálogo entre las partes.

Para finalizar, y por estar inmerso en los dos errores, destacamos el inciso ocho (8), donde el Foro Primario, "incorpora por referencia la normativa jurídica aplicable esbozada por la parte demandada en las páginas 8-14 de su memorando de derecho", incidió el Foro a *quo* al incorporar páginas que exponen una teoría doble del derecho, toda vez que el Memorando de Cumplimiento ofrece dos (2) alternativas, una con el "*Inmueble*" objeto de este pleito en su naturaleza privativa y otra en su naturaleza ganancial.

En virtud de lo anterior, y luego de un examen sosegado del expediente ante nos, concluimos que se cometieron los errores señalados puesto que existe controversia en las cantidades de los créditos expuestas, por falta de estipulación entre las partes respecto a alguno de los asuntos dispuestos y principalmente, por ser materia de prueba.

Al evaluar los documentos que nos ocupan, coincidimos con que, al adjudicar el asunto, el TPI- Bayamón no actuó de conformidad con las normas que prevalecen en las materias que atendemos. *Se cometieron los errores señalados.*

**IV**

Por los fundamentos que anteceden, se expide el auto de *Certiorari* solicitado y *se revoca* la *Resolución* emitida por el Foro de Primera Instancia, en todo aquello que sea incompatible por ser materia de prueba, es decir, las determinaciones dos (2) a la ocho (8). Es decir, no puede prevalecer como una determinación del Tribunal, todo aquello que esté en controversia sin haberse desfilado prueba en un juicio en su fondo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón disiente sin opinión escrita.


                        LCDA. LILIA M. OQUENDO SOLÍS
                        Secretaria del Tribunal de Apelaciones