Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ELIZABETH TORRES ALVARADO**<br><br>Parte recurrida<br><br><br>v.<br><br><br>**ORLANDO J. APONTE ROSARIO**<br><br>Parte peticionaria | TA2025CE00098 | **CERTIORARI**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.:<br>**DO2023CV00163**<br><br><br>Sobre: Liquidación de Comunidad de Bienes |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece ante nos, Orlando Aponte Rosario, en adelante, Aponte Rosario o peticionario, solicitando nuestra revisión sobre la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón, del día 16 de mayo de 2025. En la misma, el Foro Recurrido declaró *ganancial* un bien inmueble, objeto de controversia en el caso de epígrafe.

Por los fundamentos que esbozaremos a continuación, *denegamos el recurso.*

**I.**

El 30 de julio de 2015, se otorgó a favor de Aponte Rosario una escritura de compraventa.[1] En esta fecha, el peticionario adquirió una propiedad en el Municipio de Río Grande por la cantidad de $25,000.00. Ese mismo año, Aponte Rosario contrajo matrimonio con Elizabeth Torres Alvarado, en adelante, Torres

---

[1] SUMAC, Entrada Núm. 81, Anejo 3.

Alvarado o recurrida, bajo el régimen económico de la Sociedad Legal de Bienes Gananciales.[2]

El 10 de marzo de 2016, la propiedad del Municipio de Río Grande fue vendida por la cantidad de $105,000.00.[3] En la escritura de compraventa comparece Torres Alvarado, a los fines de acreditar la naturaleza privativa de la propiedad objeto de la compraventa. Ahora bien, surge que las partes adquirieron varios bienes inmuebles durante su matrimonio, entre ellos, un establecimiento comercial y una propiedad residencial, ambos en el Municipio de Dorado.[4]

Sin embargo, el 16 de junio de 2023, Aponte Rosario y Torres Alvarado se divorciaron.[5] Por ello, el 3 de agosto de 2023, la recurrida presentó una *"Demanda"* ante el TPI-Bayamón para liquidar la comunidad de bienes post ganancial entre esta y el peticionario.[6] El 31 de octubre de 2023, Aponte Rosario presentó su *"Contestación a Demanda"*.[7] En su escrito, el peticionario sostiene, entre otras cosas, que durante el matrimonio las partes adquirieron bienes inmuebles con dinero privativo de Aponte Rosario, como el establecimiento comercial en el Municipio de Dorado.[8]

Más adelante, el 4 de abril de 2025, Torres Alvarado solicitó al Foro Recurrido que ordenara la tasación el antedicho establecimiento comercial para la liquidación del mismo.[9] El 24 de abril de 2025, Aponte Rosario se opuso a la tasación de la propiedad en cuestión, alegando que la misma fue adquirida con dinero

---

[2] Transcripción de la prueba oral, pág. 16.
[3] SUMAC, Entrada Núm. 81, Anejo 2.
[4] SUMAC, Entrada Núm. 1.
[5] BY2023RF00768.
[6] SUMAC, Entrada Núm. 1.
[7] SUMAC, Entrada Núm. 10.
[8] Durante los años 2023 y 2024 las partes litigaron, tanto en el Foro Primario como en este, varios asuntos relevantes a la liquidación post ganancial de sus bienes. Por no ser relevantes a la controversia que hoy nos ocupa, no la reseñaremos en este dictamen.
[9] SUMAC, Entrada Núm. 65.

privativo.[10] Para dilucidar este asunto, el TPI-Bayamón celebró una vista el 15 de mayo de 2025.[11]

A esta vista compareció Aponte Rosario y su representación legal, y la representación legal de Torres Alvarado, sin esta última. En la misma declaró el peticionario. A través de su testimonio se introdujeron tres (3) documentos, a saber, la compraventa de la propiedad privativa en el Municipio de Río Grande en el año 2015, la venta de esta en el año 2016 y un cheque por la cantidad de $39,000.00.[12]

Según se desprende del interrogatorio directo, Aponte Rosario aduce que, el dinero que adquirió de su propiedad privativa fue depositado en una cuenta a la que no entraba dinero de naturaleza ganancial. Sostuvo que con el dinero privativo de esa cuenta se compró la propiedad objeto de controversia. Para ello, presentó el aludido cheque, con fecha del 15 de noviembre de 2016.

Más adelante, en el contrainterrogatorio, la representación legal de la recurrida confrontó a Aponte Rosario con la fecha de la compraventa de la propiedad comercial adquirida en el Municipio de Dorado, y la fecha del cheque. Esto, ya que el bien inmueble fue adquirido dos (2) años más tarde a la expedición del referido cheque.[13] El peticionario admitió que la copia del cheque introducido en su testimonio no era, en efecto, el utilizado para la compraventa de la propiedad objeto de controversia.[14] Adujo el peticionario, a su vez, que se había equivocado, y que probablemente sería muy difícil encontrar el cheque correcto, ya que había sido expedido por un banco que ya no existe.[15]

---

[10] SUMAC, Entrada Núm. 81.
[11] SUMAC, Entrada Núm. 85.
[12] Transcripción de la prueba oral, págs. 14-23.
[13] *Id.*, pág. 28.
[14] *Id.*, págs. 29-30.
[15] *Id.*, pág. 33.

Unos días más tarde, siendo el 21 de mayo de 2025, el TPI-Bayamón emitió una *"Resolución"* en la que determinó que el bien inmueble de uso comercial, propiedad de las partes y ubicado en el Municipio de Dorado, es ganancial, y autorizó la tasación del mismo. Sin embargo, transcribió en su dictamen una salvedad que reza de la siguiente manera: *"Todo lo anterior, sin menoscabo a que la parte demandante pueda probar que el bien ganancial tiene aportación de dinero privativo que le permitiría de ser beneficiario de un crédito en la división de la comunidad ganancial".*[16] (Énfasis suplido).

Inconforme, el 5 de junio de 2025, Aponte Rosario radicó una *"Moción en Solicitud de Reconsideración".*[17] La misma fue declarada *"No Ha Lugar"* al siguiente día.[18] Así las cosas, el 7 de julio de 2025, el peticionario recurrió ante esta Curia, mediante el recurso que nos ocupa, planteando el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al haber determinado que el bien inmueble ubicado en la Calle Bailen del pueblo de Dorado es ganancial aunque la adquisición del inmueble fue realizada con dinero privativo perteneciente al peticionario.**

Además, Aponte Rosario nos solicitó autorización para reproducir la prueba oral del caso, en conformidad con la Regla 76 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 98, 215 DPR ___ (2025). Por ello, mediante *"Resolución"* del 6 de agosto de 2025, instruimos a las partes del proceso para presentar y recibir la prueba oral. Además, advertimos a la recurrida de los términos para presentar objeciones a la misma, y presentar su oposición al recurso.

El 19 de agosto de 2025, el peticionario radicó ante nos la transcripción de la prueba oral. Además, el 17 de septiembre de 2025, Aponte Rosario presentó su *"Alegato Suplementario"*.

---

[16] SUMAC, Entrada Núm. 85.
[17] SUMAC, Entrada Núm. 88.
[18] SUMAC, Entrada Núm. 90.

Sin embargo, el término concedido a la recurrida para presentar su oposición venció sin que esta compareciera. Con los documentos que obran en autos, y analizada la transcripción de la prueba oral, procedemos a expresarnos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, *en casos de relaciones de familia*, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]
>
> (Énfasis suplido).

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente,

cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. De Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> > (A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> >
> > (B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.
> >
> > (C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> >
> > (D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

> (E)    Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)    Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)    Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
>
> *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023)

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty,* supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio,* 211 DPR 871, 902-903 (2023); *Zorniak Air Servs. v. Cessna Aircraft Co.,* 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

### B. Comunidad Post Ganancial

La Sociedad Legal de Bienes Gananciales comienza el mismo día en que se celebra el matrimonio. Artículo 508 del Código Civil de Puerto Rico de 2020, en adelante, Código Civil de 2020, Ley Núm. 55-2020, 31 LPRA sec. 6952. Ésta es una entidad económica familiar *sui géneris* que, por ser su propósito principal y razón de ser diferentes a las de otras empresas, comunidades o sociedades regulares, no tiene el mismo grado de personalidad jurídica que las sociedades ordinarias o entidades corporativas. *Torres Zayas v. Montano Gómez*, 199 DPR 458, 466 (2017); *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 978 (2010); *Reyes v. Cantera Ramos, Inc.*, 139 DPR 925, 928–929 (1996); *García v. Montero Saldaña*, 107 DPR 319, 322 (1978). Pues según expresa nuestro Más Alto Foro, "[c]ontraído el matrimonio bajo el régimen de la sociedad legal de gananciales, la gestión económica que realiza cada cónyuge se hace en beneficio de dicha sociedad y no para beneficio individual." *Muñiz Noriega v. Muñoz Bonet*, supra, pág. 978, citando a R. Serrano Geyles, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, Ed. U.I.A., 1997, Vol. 1, pág. 321.

Por otro lado, nuestro ordenamiento jurídico reconoce que, aun al amparo del régimen de la sociedad de bienes gananciales, pueden existir bienes privativos. Los Artículos 509 y 510 delimitan un listado *numerus clausus* de lo que constituye un bien privativo, entre ellos, "los que le pertenecen desde antes de contraer matrimonio, o desde antes de que la sociedad adquiera vigencia si esta se establece después" y "los que adquiere a costa o en sustitución de otros bienes privativos". Código Civil de 2020, supra, secs. 6961 y 6962. Salvo prueba que demuestre el carácter privativo de determinado bien, se reputan gananciales todos aquellos habidos dentro de la unión matrimonial. En virtud de dicha presunción *iuris*

*tantum,* la naturaleza ganancial de todo lo adquirido durante el matrimonio es controvertible, puesto que puede ser rebatida por quien alega que ciertos bienes le pertenecen de forma individual. *Muñiz Noriega v. Muñoz Bonet,* supra, pág. 980.

Ahora bien, luego de disuelto un vínculo matrimonial, surge una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente y alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división. *Díaz Rodríguez v. García Neris,* 208 DPR 706, 716 (2022); *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 178 (2018); *BL Investment Inc. v. Registrador,* 181 DPR 5, 15 (2011), *Montalván v. Rodríguez,* 161 DPR 411, 421 (2004); *Residentes Sagrado Corazón v. Arsuaga,* 160 DPR 289, 306 (2003); *Calvo Mangas v. Aragonés Jiménez,* 115 DPR 219, 228 (1984).

Cuando la comunidad de bienes postganancial no es liquidada simultáneamente en el divorcio, adviene un período en el que se mezclan y confunden provisionalmente los bienes de los excónyuges, ya sea porque se producen frutos, se saldan deudas, se obtienen ganancias o se sufren pérdidas y gastos. Así, la presunta igualdad de cuotas está sujeta a ser rebatida por una prueba pertinente. *Díaz Rodríguez v. García Neris,* supra, pág. 717.

Durante el periodo aludido, nace una *comunidad de bienes,* de la cual los excónyuges son comuneros hasta que se liquide la sociedad. *Díaz Rodríguez v. García Neris,* supra, pág. 717; *Betancourt González v. Pastrana Santiago,* supra, pág. 179. La comunidad de bienes, que así surge, no se rige por las normas de la sociedad de gananciales sino por las normas referentes a la copropiedad. *Bidot v. Urbino,* 158 DPR 294, 303-304 (2002). No obstante, la comunidad postganancial ostenta unas características distintivas a las normas entre comunes.

Aunque sus participantes cuentan con una porción alícuota, la misma no recae sobre cada bien particular, sino sobre la totalidad de la amalgama ganancial. *Betancourt González v. Pastrana Santiago,* supra, pág. 179. Por todo lo cual, la participación del comunero debe atenerse a las particularidades de la comunidad postganancial, esto es, al interés del comunero en la masa y no en un bien específico. *Íd.*

Ahora bien, establecido lo anterior, el Tribunal Supremo de Puerto Rico ha establecido que:

> [A]l momento de disolverse la sociedad de gananciales subsisten sus activos y pasivos, pero en renglones separados, pendientes de liquidación. Si esta última operación se pospone, el monto de los activos y pasivos puede variar; pueden producirse frutos, saldarse deudas, sufrirse pérdidas, obtenerse ganancias o incurrirse en gastos con relación al caudal común. **Por consiguiente, en la adjudicación final de la participación que le corresponde a cada excónyuge, debe *tomarse en consideración, de acuerdo con la evidencia sometida, si uno de los ex cónyuges puede interponer frente al otro un crédito por los cambios y las operaciones que ocurrieron en el haber común.***
>
> *Montalván v. Rodríguez,* supra, pág. 423-424.
> (Énfasis suplido).

Es decir, sobre esta particularidad de los créditos que sean solicitados, solo deberá concederse cuando haya evidencia que sostenga tal solicitud.

**III.**

El peticionario recurre ante nos, solicitando que revisemos una *"Resolución"* del TPI-Bayamón, en la que el Foro Primario determinó que la propiedad aquí en controversia es ganancial, y ordenó su tasación para su liquidación. Aduce Aponte Rosario que,

la prueba aquilatada por el Foro Recurrido, demostró que la misma fue adquirida con bienes privativos. *No le asiste la razón.*

Como explicáramos previamente, los bienes muebles e inmuebles adquiridos durante la vigencia de un matrimonio amparado en el régimen económico de la sociedad ganancial se reputan, en efecto, gananciales, esta presunción puede ser rebatida. Para ello, como vimos, el que alega el carácter privativo de estos debe, entre otras maneras, demostrar que obtuvo los bienes antes del matrimonio o que el mismo no fue adquirido con bienes gananciales.

Si bien es cierto que este ejercicio es permisible en el proceso de liquidar una comunidad post ganancial, y que la Regla 52.1 de Procedimiento Civil, supra, nos permite ejercer nuestra facultad revisora en casos de familia como el de autos, entendemos que no existe razón para ello.

Luego de un examen sosegado del expediente ante nos, y conforme a la norma que nos obliga a determinar nuestra facultad de evaluar un recurso como este, nos vemos impedidos de expedir el mismo. Además, lo cierto es que no hemos identificado perjuicio, parcialidad o abuso de discreción en la determinación del TPI-SJ.

Según los criterios evaluativos de la Regla 40 de nuestro Reglamento, supra, estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia. Este Tribunal ha evaluado detenidamente el expediente y el tracto procesal del caso de epígrafe, y no encontramos razón en derecho que justifique nuestra intervención.

## IV.

Por los fundamentos antes expuestos, *denegamos expedir el autos solicitado.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

La Juez Grana Martínez concurre sin opinión escrita.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones